UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISMELLE CASTILLO,

Plaintiff,

-against-

ALTICE USA, INC.; JESUS REYES, in his official and individual capacities; and CRISTALY CRUZ, in her official and individual capacities,

Defendants.

Case No. 1:23-cv-05040 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Before the Court is a motion by Plaintiff Chrismelle Castillo ("Castillo"), Dkts. 71, 74, to vacate the arbitration award entered in favor of Defendant Altice USA, Inc. ("Altice") on August 14, 2025. Dkt. 72-15 ("Arbitration Award" or "Arb. Award"). Altice opposes the motion and cross-moves to confirm the award. Dkts. 79, 83. For the following reasons, the Court DENIES Castillo's motion to vacate the Arbitration Award and GRANTS Altice's motion to confirm the Award.

## BACKGROUND

### I. Factual Background and Arbitration Award

Unless noted, the general factual background, as described by the Arbitrator, is not in dispute. Altice is an internet, television, and phone service provider. Arb. Award at 2. Castillo worked at Altice, along with Defendant Jesus Reyes and Defendant Cristaly Cruz. *Id.* at 2-3. Shortly after Castillo joined Altice, she and Reyes had a sexual relationship beginning around June 2018. *Id.* at 2. Reyes also became sexually involved with Cruz, and Castillo ended her relationship with Reyes in early 2021. *Id.* at 3.

Beginning in around March 2020, Altice employees began to work remotely due to the COVID-19 pandemic. *Id.* After Castillo's relationship with Reyes ended, there were various contentious interactions between them via text message. *Id.* at 4. At one point, Cruz texted Castillo intimate photographs of Castillo that Castillo contends came from Reyes. *Id.* Castillo complained on September 24, 2021 to her supervisor Jerry LaFortune that Reyes was sending inappropriate photographs of her to Cruz, Cruz was harassing her with them, and that she did not feel safe at work or at home. *Id.* LaFortune in turn informed his supervisor, Vincent Sorrentino, of Castillo's "harassment complaint." *Id.* Sorrentino spoke with Castillo and also forwarded LaFortune's email to Leslie Newmy, Altice's HR Manager. *Id.* Newmy followed up with Castillo to discuss her concerns but did not conduct any further interviews or take any other investigatory or disciplinary action. *Id.* at 5. Newmy referred Castillo to Altice's Employee Assistance Program and encouraged her to contact the police if she continued to feel unsafe. *Id.* Castillo did not raise further concerns to Altice regarding the alleged harassment. *Id.*

Another aspect of this case involves the leave that Castillo took from Altice. Castillo took Family and Medical Leave Act ("FMLA") leave from Altice but did not comply with the company's FLMA reporting policy several times in 2021. *Id.* at 3. On November 1, 2021, after Altice completed an investigation, Castillo met with her supervisor, Eugene Atkinson, to discuss it and was thereafter given a written warning. *Id.* at 5-6. Castillo was subsequently demoted and she returned to her original position six months later. *Id.* at 6.

## II. Procedural History

On June 15, 2023, Castillo filed a complaint in this Court against Altice, Reyes, and Cruz alleging sex/gender discrimination in the form of workplace harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et. seq.* ("Title

VII”), the New York State Human Rights Law, New York State Executive Law, § 296 *et. seq.* (“NYSHRL”), and the New York City Human Rights Law, New York City Administrative Code § 8-107(1), *et. seq.* (“NYCHRL”), as well as a “NYC Revenge Porn” claim for unlawful disclosure of an intimate image under New York City Administrative Code § 10-180. Dkt. 1.

On August 14, 2023, Altice moved to compel arbitration based on an arbitration agreement between the parties, Dkt. 16, and the Court granted the motion on October 12, 2023, Dkt. 32. After resolving Castillo’s motion for reconsideration, Dkts. 40-41, on December 14, 2023, the Court directed Castillo to arbitrate her claims against Altice and Reyes, and stayed her claims against Cruz pending the conclusion of the arbitration, Dkt. 60.

On April 2, 2024, Castillo filed an arbitration demand against Reyes and Altice before the American Arbitration Association. Arb. Award at 1. She brought claims for discrimination and retaliation under Title VII, the NYSHRL, and the NYCHRL against Altice and Reyes, and a NYC Revenge Porn claim against Reyes. *Id.* After the close of discovery, on June 9, 2025, Altice and Reyes moved for summary judgment as permitted by the arbitration agreement. *See id.* Oral argument on the motion was held on August 5, 2025, *id.*, and on August 14, 2025, the Arbitrator, Sara Kula, issued her decision. *Id.* at 14. She granted summary judgment in favor of Altice on all claims and in favor of Reyes on all of the discrimination claims. *Id.* Castillo’s claims against Reyes for retaliation under the NYSHRL and NYCHRL, and the NYC Revenge Porn claim proceeded to a hearing on December 4, 2025. *Id.*; *see* Dkt. 86-1.

Specifically, in her August 14, 2025 decision, the Arbitrator granted summary judgment for Altice on the federal, state, and city workplace harassment discrimination claims. *See* Arb. Award at 10. She noted that there was “little dispute regarding the underlying facts” and the pertinent legal question presented was: “whether the conduct

alleged, even when accepted as true and viewed in the light most favorable to [Castillo], constitutes actionable workplace harassment under Title VII, the NYSHRL or NYCHRL." *Id.* at 7. The Arbitrator noted that during the relevant period, Reyes, Cruz, and Castillo "did not work together in an office and had no work-related reasons to be in communication." *Id.* at 9. The messages were sent on their personal phones and while a few texts did occur during the workday, "the offending text message was sent in the middle of the night when [Castillo] was not on duty." *Id.* She also assessed that the messages were "clearly of a personal, and not work related, nature." *Id.* at 10. The Arbitrator acknowledged that Castillo testified that she felt the impact of this behavior in the workplace because she felt unsafe at work and was worried that others at work might have seen the photos. *Id.* However, the Arbitrator noted that Castillo "continued to feel comfortable working from home (which was her workplace) after that interaction, and she was never required, for any work-related purpose, to communicate with either Cruz or Reyes moving forward." *Id.* Finally, the Arbitrator addressed Castillo's argument that Newmy admitted that the conduct violated Altice's policies but found that the question for the legal claims before her was not whether there was a company policy violation; rather, the question was whether the alleged conduct was sufficient to support a claim under federal, state, or city law. *Id.*

After a full analysis of the allegations, the Arbitrator found that "a reasonable fact finder could not conclude that the conduct alleged had a sufficient impact on, or nexus to, [Castillo's] work environment so as to be actionable under federal, state or city law." *Id.* The Arbitrator concluded that "the undisputed facts show that the alleged conduct did not alter the terms, conditions, or privileges of her employment in any material way." *Id.* In support of this finding, the Arbitrator noted that Castillo "testified that she felt comfortable continuing to work from home, was never required to interact with either alleged harasser after the incident,

and identified no change in her assignments, responsibilities, or work relationships." *Id.* The Arbitrator further found that even though Altice may not have handled the complaint pursuant to its own policies, it was not negligent in controlling Castillo's working conditions, which is required for liability. *Id.* For all of these reasons, the Arbitrator found that Altice was entitled to summary judgment on Castillo's federal, state, and city workplace harassment discrimination claims. *Id.* The Arbitrator also granted Reyes summary judgment on Castillo's workplace harassment claims because he could not be held liable for aiding and abetting under state or city law where the predicate claims against Altice were dismissed, and city law does not provide for direct individual liability where Reyes did not have a role in administering Castillo's compensation, terms, conditions, or privileges of her employment. *Id.* at 13.

As for Castillo's retaliation claim against Altice, the Arbitrator found that even if Castillo met her *prima facie* burden, Castillo's undisputed violation of the FMLA policy constituted a "legitimate basis for Altice's demotion decision." *Id.* at 11. The Arbitrator then found that Castillo had not pointed to record evidence showing that a reasonable fact finder could find that Altice's proffered reason for Castillo's demotion was pretextual or that retaliation was at least one motivating factor for her demotion. *Id.* at 11-12. Instead, the record reflected that Altice issued similar written warnings to all of the employees who violated the policy and demoted all of the L2 employees — those at Castillo's level — who violated the policy. *Id.* at 11. The Arbitrator also found that Castillo's reliance on temporal proximity was not sufficient because Altice began its investigation into Castillo's violation before she engaged in any protected activity. *Id.* at 12. The Arbitrator also noted that any arguments of pretext were undermined by the fact that Castillo did not identify any L2 employees who misused the FMLA policy but were not demoted. *Id.* Thus, the Arbitrator

found that Altice was entitled to summary judgment on Castillo's retaliation claims under federal, state, and city law. *Id.* at 13.

Reyes's motion for summary judgment on Castillo's retaliation claims under state and city law, however, was denied. *Id.* The Arbitrator also denied Reyes's motion for summary judgment as to Castillo's claim against him under the NYC Revenge Porn Act because there were issues of fact as to whether Reyes disseminated the photos of Castillo to Cruz. *See id*. at 14. A hearing was held on Castillo's remaining claims against Reyes on December 4, 2025. *See* Dkt. 86-1.

On November 12, 2025, Castillo moved to vacate the August 14, 2025 decision dismissing all of her claims against Altice. Dkt. 71 ("Vacatur Motion"), Dkt. 74 ("Br."). On January 16, 2026, Altice opposed the motion to vacate and cross moved to confirm the arbitration award. Dkt. 79 ("Confirmation Motion"), Dkt. 83 ("Altice Opp. Br."). On January 28, 2026, Castillo filed her brief in further support of the motion to vacate the award and in opposition to the confirmation motion. Dkt. 86 ("Castillo Reply Br."). Finally, Altice filed its reply brief in further support of its motion to confirm the award on February 5, 2026. Dkt. 87 ("Altice Reply Br."). The motions are fully briefed.

## LEGAL STANDARD

In this Circuit, "[t]he review of arbitration awards is 'very limited . . . in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 566 (S.D.N.Y. 2024) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993)); *accord Trs. of Dist. Council No. 9 Painting Indus. Ins. Fund v. J & S Installation LLC*, No. 24-cv-04145 (JLR), 2024 WL 3797183, at *2 (S.D.N.Y. Aug. 13, 2024). Section 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, sets forth four

narrow grounds for vacating an arbitration award: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or where the arbitrators exceeded their powers." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Wall St. Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994)); *see also* 9 U.S.C. § 10(a)(1)-(4). "Consistent with federal policy favoring arbitration, these vacatur provisions are to be accorded the narrowest of readings." *Beljakovic v. Melohn Properties, Inc.*, No. 04-CV-3694 (JMF), 2012 WL 5429438, at *2 (S.D.N.Y. Nov. 7, 2012) (internal quotation marks and citation omitted), *aff'd,* 542 F. App'x 72 (2d Cir. 2013).

"A party seeking to vacate an arbitration award under the FAA faces a formidable task." *Elwell v. Raymond James Fin. Servs., Inc.*, 686 F. Supp. 3d 281, 292 (S.D.N.Y. 2023). Based on the limited nature of review of arbitration awards, the Court is "empowered to vacate an arbitral award only if one of the grounds specified in 9 U.S.C. § 10 is found to exist, or if the award manifestly disregards the law." *L'Objet, LLC v. Limited*, No. 11-cv-03856 (LBS), 2011 WL 4528297, at *1 (S.D.N.Y. Sept. 29, 2011) (alterations adopted) (internal quotation marks and citations omitted).

**DISCUSSION**

Castillo does not argue that the Arbitrator manifestly disregarded the law. Rather, Castillo seeks to vacate the arbitration award based on two sections of 9 U.S.C. § 10(a), namely that: (1) the award was procured by fraud under § 10(a)(1) based on statements that Reyes made after his deposition, and (2) the Arbitrator engaged in misconduct under § 10(a)(3) because she refused to hold an evidentiary hearing based on Reyes's post-deposition statements. *See* Br. at 1-2; 9 U.S.C. § 10(a)(1) (district court may vacate award "where the award was procured by corruption, fraud, or undue means"); 9 U.S.C. § 10(a)(3)

(district court may vacate award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"). The Court does not agree and finds that Castillo has not established a basis to vacate the arbitration award.

## I. The Arbitration Award Was Not Procured by Fraud

Castillo has not demonstrated that "the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). To vacate an arbitration award under § 10(a)(1), "it must be abundantly clear that 'the award was procured by corruption, fraud, or undue means.'" *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 256 (S.D.N.Y. 2000) (quoting *Karppinen v. Karl Kiefer Mach. Co*., 187 F.2d 32, 34 (2d Cir. 1951)), *aff'd,* 34 F. App'x 406 (2d Cir. 2002) (summary order). "A petitioner seeking to vacate an award on the ground of fraud must adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration." *Odeon Capital Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017) (citation omitted).

Castillo argues that after Reyes's counsel withdrew, Reyes made statements while appearing *pro se* that demonstrated that he perjured himself at his deposition and that perjury suborned by Altice was material to the arbitration determination. *See* Br. at 1, 5. Specifically, Castillo points to an email that Reyes sent to the Arbitrator and the parties on July 18, 2025 where Reyes explained that his attempts to contact Castillo directly were not meant to intimidate her but that he wanted to contact the Arbitrator or anyone in the case because his attorney was "with holding [sic] information [and] did not want to give [him] any contacts in the case until now," Dkt. 72-13; Br. at 5. He said he was "upset" at Altice because his employment was terminated and his "un employment [sic] benefits [were] being contested."

*Id.* He reiterated that he "[j]ust was upset [at] the company" and stated that the "company lawyers forced and molded me into saying things in depositions." *Id.*

During oral argument on the summary judgment motion on August 5, 2025, Reyes joined and spoke on his own behalf. *See* Br. at 6. The oral argument was not transcribed or recorded. According to Castillo, Reyes stated during the conference that Altice instructed him, through his counsel, to give untruthful testimony that was favorable to Altice in order to keep his job. Dkt. 73 ("Piasecki Decl.") ¶ 9. Castillo highlights two instances of Reyes's alleged perjury. First, Reyes allegedly stated that shortly after Castillo's complaint, LaFortune told Reyes that "Altice intended on 'brushing off' Plaintiff's sexual harassment complaint against Reyes in bad faith" because it was a personal and not a work issue. *Id.* ¶¶ 10, 12. Second, according to Castillo, Reyes stated that LaFortune asked him inappropriate questions about whether he was having sex with Castillo and details about it, *id.* ¶ 11, which contradicted Reyes's deposition testimony that he did not tell LaFortune about his sexual relationship with Castillo, Br. at 13. Although Castillo characterizes Reyes's comments as showing that he committed perjury, she admits that during the oral argument, the Arbitrator asked Reyes whether he lied during his deposition and he repeatedly said that he had not. *See* Piasecki Decl. ¶ 13; Dkt. 72 ("Friedman Decl.") ¶ 18.

Reyes's former counsel attested that they never told Reyes to give untruthful testimony, nor did Altice or Altice's counsel tell them that "Reyes's job at Altice might be impacted in any way by his testimony in the Arbitration." Dkt. 82 ("Rivera Decl.") ¶ 4. Counsel for Altice described the oral argument as follows: "Plaintiff's counsel argued during oral argument that Reyes lied at his deposition regarding an Altice supervisor's knowledge of his relationship with Ms. Castillo and that Altice's Motion should be denied. However, the Arbitrator stated that Reyes'[s] testimony on the issue was immaterial to her ruling on Altice's

Motion." Dkt. 81 ("Scharf Decl.") ¶ 5; *see also* Dkt. 80 ("Smith Decl.") ¶ 5 (similar). Again, there was no transcript of the oral argument.

Even assuming that Castillo's version of events is true, she has not established any of the three requirements to vacate an award on the ground of fraud. First, Castillo has not shown that Altice engaged in fraudulent activity. Castillo's characterizations of Reyes's statements do not establish that he committed perjury and that Altice suborned that perjury. Reyes firmly asserted that he was not asked to lie by Altice and pushed back on Castillo's lawyers, saying, "I never said i [sic] fired my lawyers because they ask me to lie at deposition [sic], please stop saying things on my behalf mr friedman[.]" Dkt. 80-1 at 4. Castillo also admits that Reyes affirmed to the Arbitrator during the oral argument that he did not lie during his deposition. Piasecki Decl. ¶ 13; Friedman Decl. ¶ 18.

Moreover, the two specific factual instances cited by Castillo do not demonstrate perjurious testimony. Castillo first points to Reyes's statement that Altice intended to "brush off" the harassment complaint as non-work related, Br. at 13, but this statement is not inconsistent with Reyes's deposition testimony and is further consistent with Altice's position that it did not consider Castillo's complaint to be work related. Second, Castillo contends that Reyes perjured himself when he stated that he never told LaFortune about his relationship with Castillo and then later admitted that LaFortune asked Reyes inappropriate questions about the relationship. *See id.* Those statements are not inconsistent or establish that Reyes perjured himself because it is entirely possible that LaFortune was aware of Reyes's relationship with Castillo even if Reyes did not tell him. Indeed, during his deposition, Reyes testified that he did not tell LaFortune about his relationship with Castillo and Cruz but LaFortune "probably speculated" because they were "such good friends" and he may have overheard Reyes flirting with them since "[h]is desk was close." Dkt. 73-6 at 47:12-48:7.

Castillo further cannot establish the second requirement to vacate an arbitral decision for fraud because Castillo discovered the alleged fraud prior to the issuance of the award. *See Odeon,* 864 F.3d at 196. "The purpose of requiring fraud to be newly discovered before vacating an arbitration award on that ground is to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings." *O'Connor-Roche v. RBC Cap. Markets, LLC*, No. 22-cv-01467 (LLS), 2022 WL 17798116, at *5 (S.D.N.Y. Dec. 19, 2022) (citation omitted).

Here, the Arbitrator was sent the very July 18, 2025 email that Plaintiff relies upon. Dkt. 72-13. Reyes also made his various comments about Altice brushing off the complaints, pressure from Altice, and LaFortune's knowledge of Castillo's complaints at the August 5, 2025 oral argument — before the Arbitrator rendered any decision. *See* Piasecki Decl. ¶ 12; Friedman Decl. ¶¶ 16-17. Castillo was permitted to — and did — argue to the Arbitrator at the oral argument that Reyes had committed perjury and that the motion for summary judgment should be denied. *See* Piasecki Decl. ¶ 14; Friedman Decl. ¶ 19. Moreover, in her decision, the Arbitrator noted that she took into account Reyes's statements during the August 5, 2025 oral argument even though he was not under oath. Arb. Award at 3 n.1. Thus, Castillo discovered the alleged fraud before the Arbitrator rendered her decision and it was presented to and considered by the Arbitrator. The Court will not second guess the Arbitrator's determination that summary judgment should be granted in favor of Altice notwithstanding any alleged post-deposition statements by Reyes. *See Beljakovic v. Melohn Props., Inc.,* No. 04-cv-03694 (JMF), 2012 WL 5429438, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd,* 542 F. App'x 72 (2d Cir. 2013) (denying motion to vacate on the basis of fraud under Section 10(a)(1) because "[t]o the extent that Petitioner alleges that the Award was based on perjured testimony, he had ample opportunity to present that argument to the arbitrator, and he

asserts no new evidence here."); *Hakala v. Deutsche Bank AG,* No. 01-cv-03366 (MGC), 2004 WL 1057788, at *3 (S.D.N.Y. May 11, 2004) (refusing to vacate arbitration award due to respondents' allegedly suborned perjury because petitioner "had the opportunity to present to the arbitrators evidence of this alleged fraudulent behavior of respondents. The arbitrators, as the finders of fact, had the opportunity to assess firsthand the credibility of the allegedly perjured testimony and of respondents' explanations for their last-minute document production. Accordingly, [petitioner] may not now seek review of those issues in this court.").[1]

The Court is not persuaded by Castillo's argument that the award should be vacated because she did not have the opportunity to fully vet the fraud issue in an evidentiary hearing. Castillo cites to *O'Connor-Roche*, 2022 WL 17798116, at *5-6, in support of her argument. Br. at 14-15. But this case does not support her argument and instead directly undermines it. In *O'Connor-Roche*, the court refused to vacate an arbitration award where a witness was alleged to have perjured himself. *O'Connor-Roche*, 2022 WL 17798116, at *5-6. The court found that the petitioners had been given the opportunity to address the purported perjured testimony — even though it was only through five additional minutes of allotted argument time — and therefore the arbitration panel "was aware of the alleged fraud." *Id.* at *5. Thus, it rejected a claim of fraud by perjury warranting vacatur of the award. *Id.* at *6. By all accounts, Castillo was afforded more than five minutes to raise her contentions that Reyes had perjured himself and argue against summary judgment.

[1] Castillo's reliance on statements made by Reyes after the arbitration award was issued at the December 5, 2025 arbitration hearing does not alter the Court's conclusion. The statements made by Reyes about Altice allegedly brushing off Castillo's complaints as not work related, *see* Castillo Reply Br. at 12, were similar to those that were already raised before the arbitration award was issued.

Finally, Castillo has not shown that the alleged inconsistencies in Reyes's testimony, even if perjurious, were material to the dispute. "For fraud to be material within the meaning of Section 10(a)(1) of the FAA, petitioner must demonstrate a nexus between the alleged fraud and the decision made by the arbitrators, although petitioner need not demonstrate that the arbitrators would have reached a different result." *Odeon*, 864 F.3d at 196. The Second Circuit explained that perjury without consideration of its materiality cannot be the basis for vacating an award because this "is wholly inconsistent with the language of the FAA, which allows vacatur only where the award was "*procured by* . . . fraud." *Id.* at 197 (quoting 9 U.S.C. § 10(a)(1) (emphasis added)).

The alleged inconsistent testimony by Reyes was not material to the arbitration decision. The Arbitrator found that Altice was not liable for any discrimination or harassment because the conduct was not workplace-related and the retaliation claim could not lie because others who were similarly situated received the same punishment as Castillo for violating the FMLA policies. *See* Arb. Award at 10, 12-13. Reyes's deposition testimony, and later statements, were not material to this assessment or her conclusions. Even if Altice did not take the complaints seriously and "brushed them off" in contravention of its policies, the Arbitrator still found that the conduct did not have a sufficient impact on, or nexus to, Castillo's work environment to be actionable under federal, state or city law. *Id.* at 10. And Reyes's testimony and statements had nothing to do with Altice's legitimate reasons for Castillo's demotion, given that it had issued similar discipline to other similarly situated employees for the same FMLA infractions. *See id.* at 12-13.

Thus, Castillo has not satisfied any of the three requirements for vacating an arbitration award procured by fraud under 9 U.S.C. § 10(a)(1).

**II. The Arbitrator Did Not Engage in Misconduct by Refusing to Hear Evidence**

Castillo also has not demonstrated that the award should be vacated because the Arbitrator is "guilty of misconduct" by refusing to postpone the hearing, refusing to hear pertinent and material evidence, or of any other misbehavior by which the rights of any party have been prejudiced. 9 U.S.C. § 10(a)(3).

Castillo was permitted to, and did, argue, prior to issuance of the arbitration award, that Reyes had committed perjury and the Arbitrator also heard directly from Reyes about his supposed inconsistent and influenced testimony. *See* Piasecki Decl. ¶¶ 12, 14; Friedman Decl. ¶¶ 16-17, 19. The Arbitrator also expressly stated that she considered the statements made by Reyes at the oral argument in reaching her decision. Arb. Award at 3, n.1.

The fact that the Arbitrator did not hold a separate evidentiary hearing does not constitute misconduct by the Arbitrator. "[T]he scope of . . . review of a panel's decision to admit or exclude evidence is extremely narrow." *Metro Risk Mgmt. Agency v. Hudson Specialty Ins. Co.,* No. 23-cv-01944 (VSB), 2026 WL 1910161, at *11 (S.D.N.Y. July 2, 2026) (citation omitted). "An Arbitrator must give each party 'an adequate opportunity to present its evidence and argument,' but it is 'not required to hear all the evidence proffered by a party.'" *Jiangxo Zhengao Recycled Textile Co. v. Amazon.com Servs. LLC*, No. 24-cv-03434 (LGS), 2025 WL 834724, at *4 (S.D.N.Y. Mar. 14, 2025) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013)). The Arbitrator heard from Reyes and argument from Castillo's counsel regarding alleged inconsistencies and perjury. As discussed previously, Reyes's testimony was not material to the Arbitrator's analysis of the harassment and retaliation claims, and therefore the fact that she did not hold an evidentiary hearing regarding his statements is not so fundamentally unfair as to warrant vacating the award. *See NYCool A.B. v. Pac. Fruit, Inc.*, 507 Fed. App'x 83, 88-

89 (2d Cir. 2013) (summary order) (finding no fundamental unfairness in the arbitrator refusing to hold an evidentiary hearing because petitioner "identifies no reason on appeal why an evidentiary hearing would have helped the arbitration panel resolve the issue of joint and several liability in [petitioner's] favor"); *Metro Risk Mgmt. Agency*, 2026 WL 1910161, at *11 (holding that exclusion of evidence "would not be so fundamentally unfair as a matter of law such that it would warrant vacatur of the Award").

The present case is a far cry from *Tempo Shain Corp v. Bertek, Inc*., 120 F. 3d 16 (2d Cir. 1997), where the Court vacated the arbitration award under Section 10(a)(3) because the panel did not continue the hearings to permit the petitioner to put on "crucial testimony concerning the negotiations and dealings between the parties about which it claims only [that witness] could testify." *Id.* at 17, 21. Here, the Arbitrator was presented with Reyes's deposition testimony, heard directly from him during the oral argument, received Reyes's email complaining of his counsel, and heard argument from Castillo about supposed perjury and inconsistent testimony by Reyes — all prior to issuing her award. Plaintiff also cites to *Fid. Brokerage Servs. LLC v. Deutsch,* No. 17-cv-05778 (NRB), 2018 WL 2947972, at *6-8 (S.D.N.Y. May 31, 2018), *aff'd,* 763 F. App'x 104 (2d Cir. 2019) in support of her argument. Br. at 15-17. But in *Fidelity Brokerage*, the court rejected petitioner's argument that the award should be vacated because of arbitrator misconduct, finding that the arbitration panel exercised their appropriate discretion in excluding evidence. *Fid. Brokerage*, 2018 WL 2947972, at *6-8.

For all of these reasons, Castillo has not shown that the award should be vacated pursuant to Section 10(a)(3).

## III. Motion to Confirm Arbitration Award

"Under the FAA, 'any party to [an] arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11'" of the FAA. *Elwell*, 686 F. Supp. 3d at 294 (alteration in original) (quoting 9 U.S.C. § 9). "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *Id.* (citations omitted); *L'Objet*, 2011 WL 4528297, at *3 (citation omitted).

As explained above, Castillo has not provided any valid reason to vacate the arbitration award. The facts of this case support the Arbitrator's decision and Altice's motion to confirm the arbitration award is granted. *See Shenzhen Zongheng Domain Network Co. v. Amazon.com Servs. LLC*, No. 23-cv-03334 (JLR), 2023 WL 7327140, at *7 (S.D.N.Y. Nov. 7, 2023) (granting cross-motion to confirm arbitration award after denying petition to vacate); *First Cap. Real Est. Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC*, 355 F. Supp. 3d 188, 196 (S.D.N.Y.) (same), *aff'd sub nom. First Cap. Real Est. Invs., LLC v. SDDCO Brokerage Advisors, LLC*, 794 F. App'x 86 (2d Cir. 2019).

## CONCLUSION

For the foregoing reasons, Castillo's motion to vacate the arbitration award dated August 14, 2025 is DENIED and Altice's motion to confirm that arbitration award is GRANTED. The action shall be STAYED while the parties determine whether to file motions regarding the subsequent arbitration award dated February 11, 2026, and how to

proceed with respect to Defendant Cruz. The parties shall continue to file status updates with the Court pursuant to Dkt. 64.

The Clerk of Court is respectfully requested to close the motions at Dkts. 71 and 79.

Dated: September 8, 2026
New York, New York

SO ORDERED.

Jennifer Rochon

JENNIFER L. ROCHON
United States District Judge